# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KIRSTEN KJAER WEIS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17-cv-05471 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| KIMSAPRINCESS INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kirsten Kjaer Weis ("Plaintiff") brings suit against Defendant Kimsaprincess Inc. ("Defendant") for trademark infringement and unfair competition in violation of the Lanham Act, the Illinois Uniform Deceptive Trade Practices Act, and Illinois common law. Currently before the Court is Defendant's motion [17] to transfer venue to the Central District of California pursuant to 28 U.S.C. § 1404(a). For the reasons explained below, Defendant's motion is granted. The Clerk is directed to transfer the case to the Central District of California for all further proceedings.

## I.  Background[1]

Plaintiff is a Danish makeup artist. [1 ¶ 4.] Since 2010, Plaintiff has developed and sold a line of luxury organic beauty products, including cosmetics, makeup, and skin care products, through her licensee Kjaer Weis, LLC. [*Id.* ¶¶ 4, 28.] These products have been featured in several national publications and are available for purchase at various retail outlets. [*Id.* ¶¶ 29–31.] In connection with this product line, Plaintiff owns several registered trademarks for stylized versions of her initials ("KW") and her full last name ("Kjaer Weis"). [*Id.* ¶¶ 7–14.] All

---

[1] For purposes of the instant motion, the Court accepts as true the allegations set forth in Plaintiff's complaint. The Court takes additional facts from the parties' briefs on the motion to transfer. See [1], [19], [24], [32].

of Plaintiff's beauty products are branded with Plaintiff's marks. [*Id.* ¶ 16.] Plaintiff lives in New York, New York, and her company is also based there. [*Id.* ¶ 4.]

Defendant is a California loan-out corporation with a principal place of business in Woodland Hills, California. [1 ¶ 17; 19 at 4.] Defendant has no offices or employees in Illinois. [19 at 4.] Defendant is owned by television personality Kim Kardashian West ("Kardashian"). [*Id.*] Through Defendant, Kardashian endorses various products and services, including beauty and cosmetics products, which are branded with her name and/or her initials. [*Id.*; 1 ¶ 37.] Kardashian is a resident of Calabasas, California, and she does not live in or own property in Illinois. [19 at 4; 19-1 ¶ 2.]

This dispute involves a cosmetics line called "KKW Beauty" that was released publicly in June 2017. [1 ¶ 38; 19 at 4.] Kardashian endorses and sponsors this brand, and the products are branded with Kardashian's initials ("KKW"). [19 at 4.] KKW Beauty products are sold exclusively online and are available to consumers across the United States (including those in Illinois). [1 ¶¶ 22–23; 19-1 ¶ 7.] Seed Beauty (a third party not named as a defendant) designs, manufactures, and distributes the KKW Beauty products. [1 at Ex. J; 32 at 9.] Seed Beauty is based in Oxnard, California. [19 at 5; 32 at 9.] Kardashian's manager Kris Jenner was responsible for negotiating the agreements underlying Kardashian's involvement with KKW Beauty products. [19 at 5; 19-1 ¶ 11.] Ms. Jenner resides in Los Angeles County, California. [19-1 ¶ 11.]

Plaintiff alleges that Defendant is a direct competitor in the beauty product market and that Defendant's "KKW" designations on KKW Beauty products are confusingly similar to Plaintiff's marks. [1 ¶¶ 18–24, 37–43.] Plaintiff further alleges that because of this similarity, consumers will likely be confused and mistakenly believe that her beauty products are affiliated

2

with Kardashian. [*Id.* ¶¶ 24, 33–36.] Plaintiff filed this action on July 25, 2017, asserting claims for trademark infringement under the Lanham Act, unfair competition under the Lanham Act, violation of the Illinois Uniform Deceptive Trade Practices Act, common law trademark infringement, and common law unfair competition. [*Id.* ¶¶ 44–75.] Plaintiff seeks both damages and equitable relief. [*Id.* at 15–17.]

Defendant has moved pursuant to 28 U.S.C. § 1404(a) to transfer this case to the Central District of California. [See 17.] Defendant argues that the Central District of California is a more appropriate forum because it provides better access to documents and witnesses, it is the situs of the acts of alleged infringement, and California has a stronger interest in adjudicating this dispute than Illinois. Plaintiff counters that venue is proper in Illinois, material events occurred in Illinois, and it would be inconvenient for Plaintiff and Plaintiff's witnesses to travel to California. [See 24.] Alternatively, Plaintiff argues that if transfer is considered appropriate, this action should be transferred to the Southern District of New York instead.

## II.     Analysis

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a) authorizes the Court to transfer matters based on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). Therefore, the Seventh Circuit "grant[s] a substantial degree of deference to the district court in deciding whether transfer is appropriate." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977–78 (7th Cir. 2010). The Court may transfer a case under section 1404(a) when: "(1) venue is proper in the

3

transferor district; (2) venue is proper in the transferee district; (3) the transfer will serve the convenience of the parties and witnesses; and (4) the transfer will serve the interests of justice." *Hanover Ins. Co. v. N. Bldg. Co.*, 891 F. Supp. 2d 1019, 1025 (N.D. Ill. 2012). The Court will consider these factors in turn.

### A. Is venue proper in the transferor and transferee districts?

The parties do not dispute that venue is proper in both the transferor and transferee district.[2]

The Court agrees that venue is proper in this District. Pursuant to 28 U.S.C. § 1391(b)(2), "[a] civil action may be brought in * * * a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Plaintiff has established venue in this district "because [she] allege[s] that [she] suffered injury in this District as a result of Defendant['s] alleged trademark infringement [and] unfair competition." *Midas Int'l Corp. v. Chesley*, 2012 WL 1357708, at *2 (N.D. Ill. Apr. 19, 2012) (citing *Clipp Designs, Inc. v. Tag Bags, Inc.*, 996 F. Supp. 766, 769 (N.D. Ill. 1998)).

The Court also agrees that venue would be proper in the Central District of California because it is a district "where [the action] might have been brought." 28 U.S.C. § 1404(a). Defendant resides in the Central District of California, meaning venue is proper in that district. See 28 U.S.C. § 1391(b)(1) (venue is proper in "a judicial district in which any defendant resides").

### B. Will transfer serve the convenience of the parties and witnesses?

---

[2] Plaintiff argues that Defendant contests the propriety of venue in the Northern District of Illinois. [24 at 3–6.] Defendant's briefs do not make that argument, however. See [19], [32]. Defendant contests the strength of this District's connection to the instant dispute, but Defendant does not claim that venue is improper in this District. [See 32 at 3.]

"In evaluating the convenience of the parties and witnesses, courts weigh the following factors: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Hanover Ins. Co.*, 891 F. Supp. 2d at 1025 (citing *Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc.,* 200 F. Supp. 2d 941, 946 (N.D. Ill. 2002)). Defendant "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). Considering the five factors together, the Court concludes that Defendant has met its burden.

1. **Plaintiff's Choice of Forum**

This factor weighs slightly against transfer to the Central District of California. "[P]laintiff's choice of forum is generally given substantial weight, particularly when it is the plaintiff's home forum." *Aldridge v. Forest River, Inc.*, 436 F. Supp. 2d 959, 960–61 (N.D. Ill. 2006). The plaintiff's choice of forum is entitled to less deference, however, when "another forum bears a stronger relationship to the dispute or the plaintiff's choice of forum has no connection to the material events in question." *Id.* (citing *Chi., Rock Island & Pac. R.R. Co. v. Igoe,* 220 F.2d 299, 304 (7th Cir. 1955)). Plaintiff's choice is also given less weight when it is not Plaintiff's home forum. See *Braddock v. Jolie*, 2012 WL 2282219, at *3 (N.D. Ill. June 15, 2012) (giving less weight to plaintiff's choice of Illinois as a forum because plaintiff did not reside in Illinois and the majority of material events did not occur there).

Here, the Court gives Plaintiff's choice little weight because she is not a resident of this District and few material events have occurred here. See *Anchor Wall Sys., Inc. v. R & D Concrete Prods., Inc.*, 55 F. Supp. 2d 871, 874 (N.D. Ill. 1999). Plaintiff does not live in Illinois,

nor is her business based in this state. [See 1 ¶ 4.] Plaintiff argues that her choice of this District is still entitled to some weight because relevant conduct took place in Illinois: the allegedly infringing KKW Beauty products were advertised and sold here. [24 at 6–7.] But these products were equally available for sale in *all* other states through the KKW Beauty website, and "[s]ales alone are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states." *Anchor Wall*, 55 F. Supp. 2d at 874; see also *Bodum USA, Inc. v. Williams-Sonoma, Inc.*, 2016 WL 3125003, at *1 (N.D. Ill. June 3, 2016) (where the sole basis for Plaintiff's choice of Illinois forum in trademark infringement and unfair competition action was speculation that online sales were made to Illinois residents, Plaintiff's choice received less weight in transfer analysis); *Weber-Stephen Prods., LLC v. Char-Broil, LLC*, 2016 WL 5871505, at *4 (N.D. Ill. Oct. 5, 2016) (connection to district is weak where "the accused product is sold nationwide, so the alleged infringement is occurring in several fora across the country").

Therefore, the Plaintiff's choice of the Northern District of Illinois weighs slightly against transfer.

### 2. Situs of Material Events

This factor weighs heavily in favor of transfer to the Central District of California. Several courts in this district have identified the situs of material events in a trademark infringement suit as the location "where the allegedly infringing products are designed, manufactured and marketed." *Restoration Hardware, Inc. v. Haynes Furniture Co. Inc.*, 2017 WL 2152438, at *3 (N.D. Ill. May 17, 2017) (citation omitted); see also *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLC*, 240 F. Supp. 3d 848, 852 (N.D. Ill. 2016) ("[T]he location of the infringer's place of business is often the critical and controlling consideration.") (quoting

6

*Corp. Safe Specialists, Inc. v. Tidel Techs., Inc.*, 2005 WL 2124483, at *2 (N.D. Ill. July 28, 2005)).

Here, Defendant is located in Woodland Hills, California, in the Central District of California. [19 at 4; 19-1 ¶¶ 3–4.] Kardashian, Defendant's President and owner, is also located in the Central District of California. [19 at 4; 19-1 ¶ 2.] Seed Beauty, the entity responsible for the design and production of the allegedly infringing KKW Beauty products, is located in Oxnard, California, which is also in the Central District of California. [19 at 5; 32 at 9.] Records relevant to the development and marketing of the KKW Beauty products are located in California, as are witnesses who have information about the development of the KKW Beauty products. [19-1 ¶¶ 9–12.] No such information is located in Illinois. [*Id.* ¶ 13.] The situs of material events factor therefore heavily favors transfer of this action to the Central District of California. See *Weber-Stephen*, 2016 WL 5871505, at *4 (concluding that the situs of material events factor favored transfer to the state where defendants' activities regarding the design and development of the allegedly infringing product took place); *Event News Network, Inc. v. Thill*, 2005 WL 2978711, at *4–5 (N.D. Ill. Nov. 2, 2005) (situs of material events factor favored transfer of trademark infringement claims to the location of the alleged infringer's place of business); *H.B. Sherman Mfg. Co. v. Rain Bird Nat'l Sales Corp.*, 979 F. Supp. 627, 630 (N.D. Ill. 1997) (situs of material events factor weighed in favor of transfer to California where alleged infringer was located in California and, while consumer confusion may have occurred in Illinois, it likely also occurred in California because defendant sold its products nationwide).

The situs of material events factor becomes more important when it differs from plaintiff's choice of forum, as it does here. *Braddock*, 2012 WL 2282219, at *3. Therefore,

while plaintiff's choice of forum weighs slightly against transfer, the situs of material events in the Central District of California weighs much more heavily in favor of transfer to that forum.

### 3. The Relative Ease of Access to Sources of Proof

The third factor, relative ease of access to sources of proof, weighs slightly in favor of transfer. This factor typically focuses on documentary evidence, as the convenience of witnesses is assessed separately. See *Qurio Holdings, Inc. v. Comcast Cable Commc'ns, LLC*, 2015 WL 535981, at *2–3 (N.D. Ill. Feb. 9, 2015).

All records relating to KKW Beauty are located in California. [See 19-1 ¶ 12.] The Court agrees that relevant documents are likely available electronically and could easily be transferred to this District. See *Sunrise Bidders, Inc. v. GoDaddy Grp., Inc.*, 2011 WL 1357516, at *2 (N.D. Ill. Apr. 11, 2011) (this factor does not favor or disfavor transfer where documents available electronically can be accessed anywhere). Because trademark infringement suits usually focus on the activities of the alleged infringer, however, and the alleged infringer in this case has no offices or employees in Illinois, this factor still slightly favors transfer to California where Defendant's documents are located. See *Weber-Stephen*, 2016 WL 5871505, at *4; *Braddock*, 2012 WL 2282219, at *4.

Plaintiff argues that relevant evidence regarding how consumers react to the allegedly infringing marks would be presented via consumer survey, and evidence for creating such a survey is found in Illinois. [24 at 9.] But any confusion that occurs in Illinois would also occur in California, since the KKW Beauty products are available nationwide. See *H.B. Sherman*, 979 F. Supp. at 630. Illinois does not provide any easier access to this source of proof than California, and the location of Defendant's documents in California continues to tip the balance of this factor in favor of California.

This factor therefore weighs slightly in favor of transfer to the Central District of California.

### 4. The Convenience of the Witnesses

The fourth factor, the convenience of the witnesses, weighs heavily in favor of transfer. As the movant, Defendant must specify the key witnesses to be called and "make at least a generalized statement of what their testimony would * * * include[]." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989). In assessing this factor, courts focus on the nature and quality of the proposed testimony and its relevance to the case. *H.B. Sherman*, 979 F. Supp. at 630. Defendant has identified Kardashian, Kardashian's manager Kris Jenner, and the employees of Seed Beauty (specifically principal Laura Nelson) as key witnesses.[3] Plaintiff has not specifically identified any third-party witnesses whom she plans to call.

Kardashian is located in Calabasas, California in the Central District of California. [19 at 4; 19-1 ¶ 2.] As President of Defendant, Kardashian's convenience is less significant in relation to this factor. See *Qurio Holdings*, 2015 WL 535981, at *3 ("[T]he overwhelmingly predominant view among district courts in the [Seventh] [C]ircuit is that because party witnesses are likely to appear voluntarily, [so] the convenience factor is less significant with regard to party witnesses than non-party witnesses").

Kardashian's manager, Ms. Jenner, resides in Los Angeles County, in the Central District of California. [19 at 5.] Defendant has identified Ms. Jenner as a key witness because she

---

[3] Plaintiff asserts that Defendant's arguments regarding this factor are "unsupported" because Defendant did not specifically identify particular witnesses at Seed Beauty. [24 at 10.] Although Defendant only provided exact names for Seed Beauty and one of its employees in its reply, [see 32 at 9], Defendant adequately identified the relationship of the third party witnesses relevant to this dispute in its initial brief for the Court to consider their convenience in the transfer analysis. See *Braddock*, 2012 WL 2282219, at *4 (considering convenience of potential unnamed third party witnesses located outside of Illinois).

negotiated agreements with Seed Beauty regarding the KKW Beauty product line and has knowledge regarding the extent of Kardashian's involvement with KKW Beauty. [*Id.*; 32 at 8.] The Seed Beauty employee witnesses are also located in Central District of California. [19 at 12; 32 at 9.] Defendant has identified these witnesses as individuals who have information regarding the design, manufacture, and distribution of the allegedly infringing KKW Beauty products because Seed Beauty is responsible for these activities. [19 at 5.]

The Court concludes that "the presence of third party witnesses outside the subpoena power of this court is a factor which weighs heavily in favor of transferring." *Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd.*, 776 F. Supp. 1271, 1277 (N.D. Ill. 1991). The witnesses whom Defendant has identified possess relevant information because they can testify regarding the development of the allegedly infringing products and the intent of Kardashian (as President of Defendant) and others to create a KKW Beauty designation similar to Plaintiff's marks. Courts in trademark infringement suits "generally focus on the activities of the alleged infringer, its employees, and its documents." *H.B. Sherman*, 979 F. Supp. at 630 (internal quotation marks omitted). Defendant's intent and the development of the allegedly infringing products are relevant to a likelihood of confusion analysis, meaning the testimony of Ms. Jenner and the Seed Beauty witnesses speaking to that point will be important to the disposition of this case. See *Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*, 2015 WL 3633987, at *3 (N.D. Ill. June 10, 2015) (to obtain relief under the Lanham Act and related state law, plaintiff must establish "(1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers"); *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 678 (7th Cir. 2001) ("[T]hree of the factors are likely to be particularly important [to a likelihood of confusion analysis]: the similarity of the marks, the defendant's intent, and actual confusion."). These witnesses are all

located in the Central District of California beyond the subpoena power of this Court, meaning this factor weighs heavily in favor of transfer to California. See *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (discussing the "subpoena range" of federal district courts in transfer analysis); see also *Confederation Des Brasseries De Belgique v. Coors Brewing Co.*, 2000 WL 88847, at *4 (N.D. Ill. Jan. 20, 2000) (calling the convenience of witnesses "the most important factor in the transfer balance").

Plaintiff argues that transfer would only serve to shift inconvenience to her witnesses, who will be forced to travel to California. [24 at 9–10.] But Plaintiff has not identified any third-party witnesses, let alone any who are located in Illinois. To the extent she is arguing that "many of her [third-party] witnesses" are located in New York, [*id.* at 10], Plaintiff's witnesses would have to travel whether this case proceeds in Illinois or California. Plaintiff notes that the California courts would not be able to compel attendance of her witnesses, [24 at 12], but she has not identified any third party witnesses of her own nor explained why the Northern District of Illinois would be able to more effectively compel their attendance if they are located in New York. See *Nat'l Presto Indus.*, 347 F.3d at 664.

Because the third-party witnesses Defendant identifies are all located in the Central District of California, this factor weighs heavily in favor of transfer to that forum.

5. **The Convenience to the Parties of Litigating in the Respective Forums**

Finally, the Court must consider the convenience of the parties. Regarding this factor, courts consider the residences and resources of the parties—in essence, their "abilit[y] to bear the expense of trial in a particular forum." *Von Holdt v. Husky Injection Molding Sys., Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995).

The Court finds that this factor also weighs in favor of transfer. Neither party resides in

Illinois. Plaintiff argues that she chose Illinois as the forum for this dispute because it is "a middle ground in the interest of justice." [24 at 9.] Plaintiff also argues that Defendant is in a better financial position to go to Illinois than she is in to go to California to litigate this dispute, since Defendant has "nearly infinite resources to defend against [Plaintiff's] claims in any district." [*Id.* at 11.]

Rather than being "equally convenient" to both parties and their respective witnesses, [24 at 11], Illinois is really equally *inconvenient* to both parties. Defendant is located in the Central District of California, which is the same place where the allegedly infringing products are produced. Plaintiff resides in New York and would still have to travel to prosecute her case here. While California might also be inconvenient in some way for Plaintiff, Plaintiff has already chosen a forum to which she would have to travel for this suit. Changing venue to California would increase her cost of travel (at least marginally) but it would not create a cost for Plaintiff where none had previously existed. See *Braddock*, 2012 WL 2282219, at *4 (convenience of the parties factor weighed in favor of transfer where "Plaintiff * * * will obviously have to travel * * * to pursue this case regardless of whether it proceeds in Illinois or California"). The increased inconvenience to Plaintiff in transferring the case to California does not outweigh the inconvenience to Defendant in litigating the case in Illinois.[4] See *Von Holdt*, 887 F. Supp. at 189–90 (holding that this factor weighed heavily in favor of defendants, even though plaintiffs had filed in their home forum, because all of defendants' documents and witnesses were located elsewhere); *Oplus Techs., Ltd. v. Sears Holding Corp.*, 2012 WL 2280696, at *6 (N.D. Ill. June 15, 2012) ("Given that the alleged infringer's witnesses and potentially relevant documents are in

---

[4] Plaintiff also states that she chose Illinois because "all work related to securing her trademarks was performed in Illinois." [See 24 at 9.] To the extent this is a reference to Illinois as the location of Plaintiff's counsel, this is not a proper factor for consideration in transfer analysis. *Von Holdt*, 887 F. Supp. at 190; *Bodum*, 2016 WL 3125003, at *2.

California, and that [Plaintiff] has no discernable ties to Illinois, the convenience of the parties' factor weighs in favor of transferring the action to California"). *Cf. Lodge v. Mayline Co., LLC*, 2010 WL 4853642, at *10 (D.N.J. Nov. 19, 2010) (finding that, while Plaintiff might bear some financial burden from transferring case out of his home forum from New Jersey to Illinois, transfer was still warranted because refusing the transfer request would not relieve Plaintiff from that burden).

Considering all five factors by reference to the particular circumstances of the case, the Court concludes that the Central District of California is clearly a more convenient forum than the Northern District of Illinois. See *Coffey*, 796 F.2d at 219–20.

### C. Will transfer serve the interests of justice?

"In considering the interests of justice, courts weigh additional factors, including: (1) the speed at which the case will proceed to trial; (2) the court's familiarity with the applicable law; (3) the desirability of resolving controversies in each locale; and (4) the relation of each community to the occurrence at issue." *Hanover Ins. Co.*, 891 F. Supp. 2d at 1025.

All of these factors are either neutral or weigh in favor of transfer to the Central District of California. Regarding the speed at which the case will proceed to trial, according to the evidence presented by Defendant and not disputed by Plaintiff, cases in the Central District of California get to trial twenty months faster than those in the Northern District of Illinois. For the twelve-month period ending June 30, 2017, the median time interval for civil cases to go from filing to trial was 40 months in the Northern District of Illinois and 20 months in the Central District of California. See [19 at 13] (citing Federal Court Management Statistics (June 30, 2017) http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2017.pdf). This

13

weighs in favor of transfer. See *Weber-Stephen*, 2016 WL 5871505, at *5 (less congested docket and earlier trial prospects in transferee district favor transfer).

Both districts are equally familiar with the applicable law, making this a neutral factor. Plaintiff brings claims under the Lanham Act and Illinois law. Both the Northern District of Illinois and the Central District of California are equally competent to hear Plaintiff's federal claims. See *Dean Foods Co. v. Eastman Chem. Co.*, 2000 WL 1557915, at *5 (N.D. Ill. Oct. 19, 2000). The Central District of California is also competent to hear Plaintiff's state law claims, as "federal judges routinely apply the law of a State other than the State in which they sit." *Restoration Hardware*, 2017 WL 2152438, at *4 (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 584 (2013)).

Finally, the Central District of California has a greater relationship to the controversy and therefore it is more desirable that the Central District of California adjudicate the dispute. The acts of alleged infringement occurred there, where the KKW Beauty products were designed and produced. While Plaintiff argues that Illinois's connection to this case is "strong" because Defendant's alleged violations occurred here, Defendant's alleged violations also occurred everywhere that KKW Beauty products are available—*i.e.*, in every state, including both Illinois and California. See *Weber-Stephen*, 2016 WL 5871505, at *5. California is "closer to the action" since it has an "equal interest[] in redressing the alleged infringement" and defendants' activities are concentrated there. *Id.* Illinois has little relationship to the action in comparison. Therefore, this factor also favors transfer.

For these reasons, the Court concludes that transfer to the Central District of California would serve the ends of justice.[5]

---

[5] Plaintiff argues in the alternative that, if transfer is appropriate, this case should be transferred to the Southern District of New York, her home forum, instead of the Central District of California. [24 at 12–

### III. Conclusion

The Court concludes that this matter should be transferred to the Central District of California because: (1) venue is proper in the Northern District of Illinois; (2) venue would also be proper in the Central District of California; (3) transfer will serve the convenience of the parties and witnesses, especially the non-party witnesses who are all located in the Central District of California beyond this Court's subpoena power; and (4) transfer will serve the interests of justice. Therefore, the Court grants Defendant's motion [17] to transfer venue to the Central District of California pursuant to 28 U.S.C. § 1404(a). The Clerk is directed to transfer the case to the Central District of California for all further proceedings.

Dated: October 30, 2017

Robert M. Dow, Jr.
United States District Judge

---

13.] Defendant objects to this, arguing that the convenience of the witnesses and the relative access to sources of proof weigh in favor of transfer to California over New York. [See 32 at 13.] The Court agrees that the Central District of California remains the most appropriate forum for this dispute. Transfer to New York would be more convenient for Plaintiff, but the other transfer factors, particularly the situs of material events, the relative ease of access to sources of proof, and the convenience of the witnesses still weigh strongly in favor of transfer to California. California is the situs of material events. See *Restoration Hardware*, 2017 WL 2152438, at *3 (situs of material events is where allegedly infringing products are designed, produced, and marketed). California is where non-party witnesses are located, and these witnesses would not be within the subpoena power of the Southern District of New York. See *Sky Valley*, 776 F. Supp. at 1277 ("[T]he presence of third party witnesses outside the subpoena power of this court is a factor which weighs heavily in favor of transferring."). While there may be a difference in the parties' resources such that New York would be more convenient for Plaintiff than it would be inconvenient for Defendant, convenience to the parties is only one factor in the Section 1404(a) analysis. Here, the balance of factors still weighs in favor of transfer to the Central District of California. See *Von Holdt*, 887 F. Supp. at 189–90; *Lodge*, 2010 WL 4853642, at *10.